We'll begin by hearing argument in Pettaway v. National Recovery Solutions. Good morning, Mr. Stern. Good morning, Your Honor. May it please the Court, Philip Stern, on behalf of the plaintiff appellant, Gene Pettaway, that there are no issues that give the Court great concern here. I think that on the Court's de novo review of the defendant's motion to dismiss, the motion should be denied without prejudice based on mootness due to the filing of the amended complaint, that the clerk's notation of a deficiency, which we contest was even a deficiency because it was consistent with the published ECF rules. But nevertheless, even if it was a deficiency, it still does not affect our right to file as of right the amended complaint. But the district court did look at the amended complaint and found that it wasn't sufficient, right? Right. And it's true. But there are a couple of aspects of it that the Court didn't consider. Number one, the Court didn't consider the — first of all, there was absolutely no briefing on the additional facts alleged in the amended complaint before the district judge. So — and the district judge was looking at it from a standard of Rule 15, you know, for leave to amend. But what's the difference in terms of the standard from judging the complaint? I mean, the judge looked at the complaint and concluded that there was — that nothing in the amended complaint was going to change the outcome, right? Right. So the — but the judge overlooked a couple of things. Number one is, there was a new fact set forth with respect to a different type of violation, which was the violation with respect to making a one-time, you know, limited-time sensitive offer. That's a — The judge had a footnote about that, though. There was a footnote where he said this wasn't one of those one-time-only offers that some of the other cases you cite talk about, right, where they said unique opportunity, you know, limited one-time offer or something like that. He had a footnote where he said this wasn't one of those situations. The way I read the footnote was that he didn't even see that the letter made a settlement offer. Well, why don't we just talk about the merits of that argument? Okay. It doesn't say this is a one-time offer or a unique offer. It's never coming back, right? It just has a time limit, a deadline, which most offers have, and it says — Well, it invites a call if you want to talk more about it, right? Right. It invited a call if the debtor wanted to talk more about the debt. Is it your position that if you have a deadline on an offer in a letter, okay, if you have a deadline that it's deceptive, if it's possible that you might reoffer it at some later time, is that your position? The position is that when the offer — and, again, it primarily relies upon the decision from the Seventh Circuit — that it says this offer is time-sensitive and must be received in our office on or before October 9, 2018. I think that's pretty clear. But the Seventh Circuit case, Every, said this is a unique opportunity. Don't you think that's different when someone says this is unique? That suggests potentially to the way sophisticated consumers that it's never coming back. This didn't say this was unique. It just said a deadline. Every also talked about what some other letters also talked about. They weren't just limited to what they were saying. They were saying is when — and Every obviously was balancing the problem of, on the one hand, that basically it's pretty standard in the industry that there's going to be more offers, but you don't tell them that up front because that undermines your attempt to try to settle it in the letter that you're sending. And then at the same time, though, it misrepresents the consumer that this is their only time. She doesn't pay the offered amount by October 9, 2018. That's her only opportunity to settle for less than the full amount. You're reading that in. It doesn't say only. There's a Fifth Circuit case where they said only during the next 30 days. This doesn't say only. I think in order for you to be correct, it would have to be that any time a debt collector puts a date on an offer, that that would be deceptive if they were potentially going to settle at some lower amount or some amount less than the full value at some later time. I think that would be extraordinary. I think the least affected consumer operates on the assumption that stores, when they run discounts, debt collectors, when they run discounts, whoever runs discounts, that they always have the ability to bring it back. Right? Well, I mean, just to point out, I mean, every pointed out of other settlement offers they were talking about, we would like to offer you a unique opportunity to satisfy your outstanding debt. Times are wasting. Act now and receive 30 percent off if you pay by March 31st. None of those actually said this is the only offer you're going to get. What I think Everey says is that those kinds of statements, yeah, when you make an offer and you put a deadline and you say, and certainly here they added the expressed term, they said this is a time-sensitive offer, that without more, and that's why they came up with the safe harbor language of saying, you know, we're not obligated to renew the offer. The only – I've not found any Second Circuit decision that's even cited Everey. The only decision that cited Everey in a district court within the Second Circuit that dealt with this issue, there are other issues in Everey, but is last year, Judge Donnelly wrote. But in that particular case, the letter actually used the safe harbor language. And she said, obviously, there's no misrepresentation that this is a one-time limited offer because it used the safe harbor language. Let me just ask you about the other claim briefly. Yeah. You're not arguing that the interest or the late charges were either contractually or legally prohibited in this case. In fact, in your first complaint, you said that the charges were – the interest charges were accrual, right? That's correct. Right. You're not claiming there's any contractual or legal barrier to them collecting either the interest or late charges, correct? Well, I don't know about the late charges and other charges. Not in your amended complaint. I don't know. In your amended complaint, you don't say that for either of those things. The only thing you say therefore is other charges, and I'm not even sure what that means. You say other charges are contractually and legally prohibited. That was the only thing you said in your amended complaint, right? That's prohibited by either law or by contract are other charges. Right. So our position is that by contract and law, we're not aware that there's any basis for anything. Other charges. Other charges or late charges, because late charges would only accrue when there's – typically would only accrue when there are installments that are due, and when an installment is late, then there's a late charge. Once it's in default and accelerated, there's no late charges that continue to accrue. And I know that the adversary wrote in their brief they cited to the Higher Ed Act, but those will deal with government-guaranteed student loans. This was a private student loan. This is – there's no – there's no reinstatement here. There's no opportunity like there was in the Avila v. Reliant case, where there was an opportunity for reinstatement. This was a charged-off private student loan that was bought by a debt buyer. So that's the case. And then 1692e5 addresses both taking actions that are legally prohibited as well as actions that are not intended to be taken. And after Mr. Kleinman, who's filed the complaint, brought us in as co-counsel and we looked at it based upon what we were able to ascertain by looking at other cases involving U.S. asset, the debt buyer, that the debt buyer doesn't charge interest. And from that, we felt that it was legitimate to allege that they don't charge interest. They don't intend to charge interest. Is what you just said in the complaint? The amended complaint? I mean, it seems pretty conclusory what's in the complaint, that they're not intending or able to take interest or charge fee. I think what we're talking about is they don't intend to or they don't. Well, I mean, there's no basis for it. I mean, so it's a – it seems like a conclusory statement, which wouldn't be sufficient to state a claim if it's just purely conclusory. I would disagree that it's – that it's conclusory, because other than having a spy inside, and I raised this in the reply, other than having a spy inside U.S. Asset to know what, in fact, is their policies and practices, I mean, how do we get that? But we can certainly look at how they've behaved in the past and draw an inference from their prior behavior, and that's what we've done. Did you lay that out in the complaint? I don't know that we laid out the details of that, but I don't know that necessarily that under Iqbal and Twomley we're required to go into that much detail about it. We've alleged the fact that they don't intend to do it. I know, but the language is only may, which means it's possible. So if interest is accruing, they have a policy of not charging it, right? Your position would be in all those situations, if they have the safe harbor language in where it says may, if the current position is we don't – although they could change their mind – we don't do that right now, you're saying that that's deceptive. Well, I – look, there's things I don't know yet that we'll get in discovery. But then in every case we would have to – There are many times when there's – In every case it would be discovery and what the state of mind was of the debt collector. How likely are you to collect this? How likely are you not to collect this? That would be – There could very well be. I mean, in discovery, for example, there are many times that I've seen in debt buyer contracts where the creditor is selling it where they don't allow the debt buyer to accrue interest. It's this static amount. That may very well be the case here, but we don't know that yet. But certainly we know that by their behavior, that they act consistent with – Your first complaint, you said it was accruing in your first complaint. Well, I understand. Mr. Kleinman did that. He – and then when we got on board, we did some additional research, and that's why we were able to reach that point of saying that there was no interest accruing. And then once we get to that point, then it's a static debt. And the safe harbor from Miller and Avila no longer applies. It misrepresents that it's a debt that's accruing, that's increasing, that's a dynamic debt and not a static debt. But I think the whole point is that these issues really needed to be fleshed out in an appropriate – in a motion to dismiss that the district judge had nothing before him, had no record before him other than the submission of the medical plan. What does the district judge have before him or her on a motion to dismiss other than the complaint? And you had the first part of your question. What does the district court have before it other than the complaint on a motion to dismiss? I mean, you're not – The arguments of the parties who can, you know, to set it out. Which you've just had. We're not the district court, obviously, but you've had an opportunity to argue why your complaint – And I would submit, given the procedural setting of this, that the – this court shouldn't be setting, you know, until there's an opportunity to develop those issues. Develop what? What? Develop what? The – for example, if there are issues that go to the – like the sufficiency of whether the allegation about there being no interest, that maybe we have an opportunity when we hear from the court, an opportunity to further amend. Because – maybe to lay out in more detail if that's what satisfies the court. I'm sorry. No, I'm just – your light's on. Anything else that you would like to tell us at this point? Nothing else, Your Honors. Thank you. Thanks, Mr. Stern. We'll reserve decision at this point and get a decision out in due course.